LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Email: cklee@leelitigation.com
*Attorneys for Plaintiffs, EPA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMANTHA PHILLIPS and NADIA SINGH, *on behalf of themselves, Collective Plaintiffs, and the Class,*<br><br>Plaintiffs,<br><br>v.<br><br>PARTS AUTHORITY, LLC<br><br>Defendant. | **Case No.:**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs SAMANTHA PHILLIPS ("Plaintiff PHILLIPS") and NADIA SINGH ("Plaintiff SINGH") and on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendant PARTS AUTHORITY, LLC, ("Parts Authority") and state as follows:

**INTRODUCTION**

1. This is a class action brought by female employees of Parts Authority, alleging violations of 29 U.S.C.§ 206(d) ("Equal Pay Act"), N.Y. Lab. Law § 194 ("EPL"), New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("NYSHRL"), the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), and the relevant State Laws of each State in which Defendant do business. Due to Defendant's egregious

misconduct and the multiple severe harms suffered, Plaintiffs and Class Members are entitled to recover from Defendant the following: (1) back pay, (2) front pay, (3) compensatory damages for emotional distress, (4) punitive damages, and (5) attorneys' fees and costs.

2. Plaintiffs allege that, pursuant to the Equal Pay Act, EPL, NYSHRL, and relevant State Laws, Defendant unlawfully discriminated and underpaid their female employees in comparison to their similarly situated male coworkers.

3. Defendant PARTS AUTHORITY, LLC owns and operates a company engaged in the distribution of automotive replacement parts, tools/equipment, and transmissions under the trade name PARTS AUTHORITY. Defendant provides services at "over 250 locations across the Northeast, Mid-Atlantic, Mid-West, Pacific Northwest, and the Southwest." Specifically, Defendant operations (i) 15 branches in Arizona; (ii) 46 branches in California; (iii) 3 branches in Colorado; (iv) 12 branches in Connecticut; (v) 6 branches in Florida; (vi) 12 branches in Georgia; (vii) 12 branches in Illinois; (viii) 9 branches in Iowa; (ix) 1 branch in Maine; (x) 14 branches in Maryland; (xi) 13 branches in Massachusetts; (xii) 5 branches in Missouri; (xiii) 13 branches in New Jersey; (xiv) 9 branches in New Mexico; (xv) 35 branches in New York; (xvi) 3 branches in Ohio; (xvii) 5 branches in Oregon; (xviii) 5 branches in Texas; (xix) 7 branches in Utah; (xx) 3 branches in Virginia; (xxi) 8 branches in Washington; (xxii) 1 branch in Washington D.C.; and (xxiii) 3 branches in Wisconsin. *Se*e **Exhibit A**, Defendant's Website.

4. Plaintiffs bring claims on behalf of potential class members, who were all women employed by Defendant. Plaintiffs and the potential class were all underpaid due to a common practice of paying female employees less than their male colleagues for equal work, due to a pervasive and pernicious company culture that systematically devalued female employees and their work.

5. At nearly all levels of its ranks, including its managers, Parts Authority has paid its female professionals less than similarly situated male professionals, even though they hold equivalent positions and perform the same or substantially similar work with similar or in some cases superior results.

6. Parts Authority's policies and practices for promoting, evaluating, and issuing pay raises results in a disproportionate benefit to men over equally or more qualified women. As a result, female employees have been systematically circumvented and excluded from promotion opportunities that are routinely afforded to their male counterparts.

7. The resulting underrepresentation of women in Parts Authority's management ranks is stark. Women only comprise 8% of Parts Authority's executive management positions.

8. Of the 28 executive management positions women only comprise the following 2 positions, both of which have been historically perceived as female C-suite positions: (i) Vice-President of Marketing, Jacqueline Rodriguez, and (ii) Vice-President of Human Resources, Robyn Mills. *See* **Exhibit B**, Defendant's Website "Executive Team" webpage.

9. Women at Parts Authority have received less compensation and have been promoted less frequently than their male counterparts as a result of the firm's discriminatory policies, patterns, and/or practices. The violations of its female employees' rights are systemic, are based upon company-wide policies and practices, and are the result of unchecked gender bias that pervades Parts Authority's corporate culture. They have not been isolated or exceptional incidents, but rather the regular and predictable result of Parts Authority's company-wide policies and practices and lack of proper accountability measures to ensure fairness.

10. Parts Authority's employment practices have a disparate impact on women. As an example, Parts Authority's performance review process results in disproportionately higher

rankings for male professional employees than their female comparators. Parts Authority's performance review effects promotion opportunities and compensation. Further, the performance review process provides for no objective measure of performance. For Plaintiffs such objective measures may have included invoices completed, client service requests finished, parts stocked per day, and numerical client evaluation scores.

11. Compensation is not determined by any objective measure of performance. As a result, the compensation procedure results in a disproportionately low compensation rate for women compared with similarly situated men.

12. These company-wide policies and practices, while facially neutral, have had an adverse impact on the compensation, promotion, and performance evaluations of female employees as compared to their male counterparts.

13. Plaintiffs bring this equal pay class action on behalf of themselves and all persons who, during the applicable limitations period up to and including the present, were similarly underpaid by Defendant in violation of protections afforded under the the equal pay laws and regulations passed in the following states:

1) Arizona: A.R.S. § 23-341 *et seq*
2) California: California Code, Labor Code - LAB § 1197.5.;
3) Colorado: Colorado Wage Claim Act, Colo. Rev. Stat. § 8-5-101 *et seq.*;
4) Connecticut: Amended Conn. Gen. Stat. § 31-75 *et seq.*;
5) Florida: Florida Statutes § 448.07*et seq.*; Florida Statutes § 725.07 *et seq.*; Florida Statutes § 760.10 *et seq.*;
6) Georgia: GA Code § 34-5-1 *et seq.*;
7) Illinois: 820 ILCS 112/10 *et seq.;*
8) Iowa: Iowa Code § 216.6 *et seq.*;
9) Maine: 26 M.R.S.A § 628 *et seq.*;
10) Maryland: MD Labor and Employment Code § 3-301*et seq.*;
11) Massachusetts: Mass. Gen. Laws c. 149, § 105A *et seq.*;
12) Missouri: MO Rev Stat § 290.400 *et seq,* and MO Rev Stat § 213.055;
13) New Jersey: NJ Rev Stat § 34:11-56.2, and NJ Rev Stat § 10:5-12;
14) New Mexico: New Mexico Fair Pay for Women Act, NM Stat § 28-23-1 *et seq.*;
15) New York: New York Labor Law, Article 6 § 194 *et seq.*, and NY Exec L § 290 *et seq.*;

16) Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.17 *et seq.*;
17) Oregon: Oregon Equal Pay Act, Oreg. Rev. Stat. §51-652.220 *et seq.*;
18) Texas: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;
19) Utah: Utah Antidiscrimination Act, Utah Code § 34A-5-101 *et seq.*;
20) Virginia: Code of Virginia § 40.1-28.6 *et seq.*;
21) Washington: Washington equal Pay and Opportunities Act, WA Rev Code § 49.58.005 *et seq.*;
22) Washington D.C.: Human Rights Law, DC Code § 2–1402.11 *et seq.*; and
23) Wisconsin: Wisconsin Fair Employment Act, Wis. Stat. §§ 111.31 *et seq*.

## PARTIES

14. Plaintiff SAMANTHA PHILLIPS is a resident of Nassau County, New York.

15. Plaintiff NADIA SINGH is a resident of New York.

16. Defendant PARTS AUTHORITY, LLC is a limited liability company organized under the laws of Delaware with a principal place of business at 3 Dakota Drive, Suite 110, New Hyde Park, NY 11042.

17. Defendant maintains control, oversight and direction over the operations of its entire business which, at all relevant times, employed more than 500 people.

18. At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the Fair Labor Standards Act ("FLSA") and the EPA.

19. At all relevant times, the work performed by Plaintiffs, EPA Collective Plaintiffs, and Class Members were directly essential to the business operated by Defendant.

20. At all relevant times, Plaintiffs PHILLIPS and SINGH were Defendant's employees within the meaning of NYLL § § 2 and 651.

21. At all relevant times, Defendant was Plaintiff PHILLIPS' and Plaintiff SINGH's employer within the meaning of NYLL § § 2 and 651.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1343, as Plaintiffs allege claims under federal law pursuant to the EPA as incorporated 29 U.S.C. § 216(b) as well.

23. In addition, this Court has supplemental jurisdiction under 28 U.S.C. § 1367, because Plaintiff's State law claims arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial portion of the events giving rise to this action took place in this District.

25. Contemporaneously with the filing of this Complaint, Plaintiffs have mailed a copy of this Complaint to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502(c) of the New York City Administrative Code.

26. Any and all other prerequisites to the filing of this suit have been met.

## NATIONWIDE EPA COLLECTIVE ACTION ALLEGATIONS

27. As the EPA incorporates the collective class structure of FLSA under its terms, Plaintiffs bring claims for a collective class pursuant to the FLSA's section 16(b), 29 U.S.C. § 216(b).

28. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all female employees employed by Defendant on or after the date that is three years before the filing of the Complaint in this case as defined herein ("EPA Collective Plaintiffs").

29. At all relevant times, Plaintiffs and EPA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them on an equal basis with their similarly situated male colleagues and the retaliation through termination or constructive discharge of such employees due to the refusal to compensate them on an equal basis with their similarly situated male colleagues. The claims of Plaintiffs stated herein are essentially the same as those of EPA Collective Plaintiffs.

30. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. 206(d) and Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The EPA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to the EPA Collective Plaintiffs via first class mail to the last address known to Defendant.

**RULE 23 CLASS ACTION ALLEGATIONS**

31. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all female employees employed by Defendant and is 6 years before the filing of this Complaint in this case as defined herein (the "Class" or "Class Members").

32. All said persons, including Plaintiffs, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendant. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendant's records. For

purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

33. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendant, there is no doubt that there are more than 40 members of the Class.

34. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All Class Members were subject to Defendant's corporate practices of: failing to pay Class Members on an equal basis with their similarly situated male colleagues.

35. Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

36. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

37. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated

persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

38. Defendant and other employers throughout the United States violate NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

39. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a) Whether Defendant employed Plaintiffs and Class Members within the meaning of the State Labor Laws;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendant required to pay Plaintiff and Class Members for their work;

d) Whether Defendant engaged in similar performance reviews and used similar systems to determine business opportunities and compensation for Plaintiff and the Class; and

e) Whether Defendant paid female employees less than their similarly qualified male counterparts.

## STATEMENT OF FACTS

*Plaintiff PHILLIPS' Discrimination, Equal Pay, and Hostile Work Environment Claims:*

40. Plaintiff PHILLIPS was hired by Defendant in or about 2011 to work as an accounts payable associate. Plaintiff PHILLIPS' employment terminated in or around June 2024.

41. During her employment, Parts Authority repeatedly discriminated against Plaintiff PHILLIPS and continuously paid her less than her similarly situated male colleagues.

42. During Plaintiff PHILLIPS' tenure, Defendant consistently hired young males (for the same position as Plaintiff PHILLIPS and other more senior female employees) at starting pay rates higher than these female workers.

43. In 2020, during the COVID shutdown of most of New York State. Plaintiff PHILLIPS was instructed that she was required to appear in-person daily. Plaintiff PHILLIPS' male colleagues, such as Thomas Santevecchi, who worked in the same position as Plaintiff PHILLIPS were permitted to work remotely and were compensated more despite having less seniority.

44. Throughout Plaintiff PHILLIPS' tenure, Parts Authority consistently reviewed her performance more harshly than it did her male colleagues, paid her less in compensation, and promoted equally or less qualified males instead of her to positions for which she was qualified. Plaintiff PHILLIPS was also provided fewer business opportunities, less training and mentorship, and worse other terms and conditions of employment that Parts Authority made available to similarly situated males.

45. During Plaintiff PHILLIPS' employment, in or around 2019, Defendant hired two (2) additional men to the department (Thomas Santevecchi and Paul Rodriguez), whose starting compensation was higher than that of Plaintiff PHILLIPS despite Plaintiff PHILLIPS having over a decade of experience in the field.

46. When Plaintiff PHILLIPS received performance reviews, she consistently scored lower than her similarly situated male colleagues despite handling and producing significantly more work than her male colleagues.

47. Defendant was aware that their performance reviews, upon which they determine promotions and compensation, were flawed and not representative of employees' actual work product.

48. Plaintiff PHILLIPS responded to her performance reviews in 2022 and 2023 by reporting to human resources that her performance review was incorrect and that discrimination played an unfair role in these reviews. Despite Plaintiff PHILLIPS' complaint to human resources, Defendant conducted no investigation and took no action to confirm and/or address Plaintiff PHILLIPS' complaint.

49. Defendant's performance reviews are solely comprised of categories requiring a subjective review of employees performance. The categories included the following:

a. “Accountability”: which asked if the employee was “Responsible and able to be relied upon. Holds self and others accountable in meeting performance commitments and exhibiting our culture and values.”

b. “Customer Focus”: which asked if the employee “Establishes long term partnerships with internal and external customers. Anticipates customer needs, commits to solving problems, and provides services that are beyond customer expectations.”

c. “Adaptability”: which asked if the employee “Adjusts mindset in real-time to match the demands of different situations. Is agile, open to change, and rapidly adapts to new information, changing conditions, or unexpected obstacles.”

d. “Conflict Management”: which asked if the employee “Sees conflict as opportunities to learn a different perspective. Solves problems and settles differences in productive ways with minimum noise.”

e. “General”: which asked if the employee is “Able to be relied upon. Is aware of the impact that missing work will have on our customers and their co-workers. Maintains a consistent and predictable schedule and adheres to PA's attendance policy.”

f. “Safety”: which asked if the employee “Adheres to and promotes safe working practices. Follows all safety related policies, practices and procedures.”

g. “Compliance”: which asked if the employee “Understands and adheres to company policies and procedures to ensure compliance (i.e., handbook policies. SOPs). Effectively uses ADP for clocking, payroll, time off requests, & various HR topics and team member benefits.”

h. “Technology”: which asked if the employee “Understands and utilizes job related tools and technology required to effectively perform in their role.”

i. “Analytical”: which asked if the employee “Analyzes facts, arrives at alternative solutions and provides recommendations to their team and to higher management.”

j. “Communication”: which asked if the employee “Develops and delivers communication that fits the needs of different audiences. Shares ideas, keeps their team and others informed about problems, opportunities, progress, and solutions.”

k. “Decision Quality”: which asked if the employee “Makes good and timely decisions utilizing all available information that keeps them, their team, and the organization moving forward.”

l. “Execution”: which asked if the employee “Consistently strives for results, eager to take on initiatives, even in challenging circumstances. Driven to exceed their goals and their team's goals and objectives as quickly as possible, while focusing on the end result.”

m. “Quality of Work”: which asked if the employee’s “Completed work is accurate (few or no errors), thorough (avoiding the necessity to perform further work to complete it) and neat (the finished product is legible, clean, and orderly).”

n. “Quantity of Work”: which asked if the employee “Pays attention to workload and prioritizes efficiently so that they and their teams can meet responsibilities and deadlines within the given amount of time.”

o. "Self-Awareness": which asked if the employee "Reflects on feedback to gain Insight into personal strengths and improvement opportunities. Thinks rationally about all factors surrounding a situation before responding. Is aware how their words and actions impact others."

p. "Self Development": which asked if the employee "Actively seeks new ways to grow and be challenged and accepts assignments that broaden their capabilities."

q. "Works to Full Potential": which asked if the employee "Leverages the qualities, competencies, and attributes that are needed to excel in their current role."

r. "Pillars for Success": which asked if the employee's "decisions and actions are made with the interest of all our stakeholders in mind and we are responsible for building and creating shareholder value. Our success and how we work to execute our Mission are governed by four overarching Pillars that we expect all team members to demonstrate."

s. "Values": which asked if the employee exhibits "Integrity," "Pride" in their work, "Teamwork," and an "Embrace [of] Differences."

50. The subjective performance reviews are one example of the means by which Defendant pay their female employees less than their male colleagues.

51. As a result of unfair practices, including subjective performance reviews, Plaintiff PHILLIPS' yearly merit increases were significantly reduced in comparison to her male colleagues.

52. Despite these low performance reviews, Plaintiff PHILLIPS was instructed to engage in a supervisory role over those in her department and tasked with training and reviewing of other individuals work in the department. Despite the efforts she spent on training and supervision, Defendant paid Plaintiff PHILLIPS less than it paid newly hired males (e.g., Thomas Santevecchi and Paul Rodriguez) in her department.

53. Neither Thomas Santevecchi nor Paul Rodriguez had more experience than Plaintiff PHILLIPS. Mr. Santevecchi was hired directly out of high school.

54. On February 19, 2024, Plaintiff PHILLIPS was put on an improvement plan despite her strong performance using objective standards and measurements.

55. Plaintiff PHILLIPS once again complained to human resources regarding the unfair, subjective evaluations of her supervisors. Rather than conduct an investigation into Plaintiff PHILLIPS' complaints, Defendant lowered her salary by approximately $20,000.00 per annum.

56. Due to Defendant's unlawful discrimination, unequal payment, and hostile work environment, Plaintiff PHILLIPS left Defendant's employ in June 2024.

*Plaintiff SINGH's Discrimination and Equal Pay Claims:*

57. Plaintiff SINGH was employed by Defendant from in or about January 2014 until in or about March 2024 as an Accounts Payable Clerk, most recently holding the title of Accounts Payable Clerk – Senior Specialist, at Defendant's headquarters located at 3 Dakota Drive, New Hyde Park, New York.

58. Plaintiff SINGH's duties included producing invoices, reviewing data sheets, and collecting payments owed to Defendant.

59. Throughout Plaintiff SINGH's tenure, Defendant paid Plaintiff SINGH less than her male employees who performed the same work. Although Plaintiff SINGH's rate of pay reached only $23.00 per hour after more than ten (10) years of employment, Defendant regularly hired new male employees into the same position as Plaintiff SINGH at starting rates of approximately $24.00 per hour or more.

60. Prior to the birth of her child in September 2022, Plaintiff SINGH repeatedly requested promotions and raises. Defendant rebuffed each of Plaintiff SINGH's requests.

61. In or about January 2023, in order to accommodate Plaintiff SINGH's childcare obligations, of which Defendant was aware, Defendant approved a hybrid schedule for Plaintiff

SINGH pursuant to which she worked in Defendant's office two (2) days per week and remotely for the remainder of the week.

62. In or about March 2024, Plaintiff SINGH took a day off from work to attend to her hospitalized mother-in-law. The next day, Plaintiff SINGH's manager, Pamela Jankowsky, instructed Plaintiff SINGH to take the following day off as well. Plaintiff SINGH explained that an additional day off was unnecessary because she was scheduled to work remotely pursuant to her hybrid schedule.

63. Immediately thereafter, Manager Jankowsky, Manager Sherry Elowsky, and Defendant's Director of Human Resources began targeting Plaintiff SINGH and revoked her hybrid schedule, directing Plaintiff SINGH to report to Defendant's office five (5) days per week. Other male employees holding the same position as Plaintiff SINGH remained on hybrid schedules. Plaintiff SINGH was the only such employee ordered to return to the office full-time.

64. Defendant knew that Plaintiff SINGH could not report to the office five (5) days per week due to her childcare obligations. By revoking Plaintiff SINGH's hybrid schedule, Defendant left her no choice but to resign, and Plaintiff SINGH was thereby constructively discharged in or about March 2024.

65. As a result of Defendant's discriminatory conduct, Plaintiff SINGH suffered economic damages, as well as significant stress and anxiety.

66. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs and Class Members in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIMS

### COUNT I
### VIOLATIONS OF EQUAL PAY ACT OF 1963

67. Plaintiffs reallege and incorporate all the above allegations as if fully set forth herein.

68. Parts Authority discriminated against Plaintiffs and Class Members in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206 et seq., as amended by the Equal Pay Act of 1963, by paying Plaintiffs and Class Members less than male counterparts who performed equal work requiring equal skill, effort, and responsibility, and which was performed for the same employer.

69. Parts Authority implemented and maintained a compensation policy that resulted in underpayment of salary and bonuses to Plaintiffs and Class Members.

70. Parts Authority implemented and maintained a policy of retaliating against employees who raised lawful complaints protected by the Equal Pay Act.

71. The EPA makes it unlawful for an employer to discriminate on the basis of sex by paying lower wages than the opposite sex for equal work, as well as to retaliate against any individual for making a complaint about such discrimination.

72. Parts Authority's actions were intentional, deliberate, malicious, reckless, and conducted in complete disregard of causing harm to Plaintiffs and Class Members.

73. As a direct and proximate result of the aforementioned conduct, Plaintiffs and Class Members were damaged and suffered economic losses, mental and emotional harm, and anguish and humiliation.

74. By reason of the retaliation suffered at Parts Authority, Plaintiffs and Class Members are entitled to all legal and equitable remedies available under the EPA.

**COUNT II**
**VIOLATIONS OF NEW YORK LABOR LAW § 194**

75. Plaintiffs reallege and incorporate all the above allegations as if fully set forth herein.

76. At all relevant times, Plaintiffs PHILLIPS and SINGH and Class Members were employed by Defendant within the meaning of NYLL, §§ 2 and 651.

77. At all relevant times, Defendant knowingly and willfully violated Plaintiffs PHILLIPS and SINGH and Class Members' rights by systematically discriminating against them on the basis of their gender by paying Plaintiffs PHILLIPS and SINGH and Class Members less than male counterparts who performed equal work requiring equal skill, effort, and responsibility, and which was performed for the same employer.

78. Parts Authority implemented and maintained a compensation policy that resulted in underpayment of salary and bonuses to Plaintiffs PHILLIPS and SINGH and Class Members.

79. Parts Authority implemented and maintained a policy of retaliating against employees who raised lawful complaints protected by the Equal Pay Act.

80. NYLL § 194 makes it unlawful for an employer to discriminate on the basis of sex by paying lower wages than the opposite sex for equal work requiring equal skill, effort, and responsibility and performed under similar working conditions, or for substantially similar work, when viewed as a composite of skill, effort, and responsibility.

81. Parts Authority's actions were intentional, deliberate, malicious, reckless, and conducted in complete disregard of causing harm to Plaintiffs PHILLIPS and SINGH and Class Members.

82. As a direct and proximate result of the aforementioned conduct, Plaintiffs PHILLIPS and SINGH and Class Members were damaged and suffered economic losses, mental and emotional harm, and anguish and humiliation.

83. Pursuant to NYLL § 198, Plaintiffs PHILLIPS and SINGH and Class Members are entitled to recover the full amount of the underpayment, liquidated damages equal to three hundred percent (300%) of the total amount of wages found to be due for Defendant's willful violations of NYLL § 194, prejudgment interest, and reasonable attorneys' fees and costs.

84. By reason of the retaliation suffered at Parts Authority, Plaintiffs PHILLIPS and SINGH and Class Members are entitled to all legal and equitable remedies available under the NYLL.

**COUNT III**
**VIOLATIONS OF NEW YORK STATE HUMAN RIGHTS LAW**

85. Plaintiffs reallege and incorporate all the above allegations as if fully set forth herein.

86. The New York State Executive Law § 296(1)(a) provides that:

> 1. It shall be an unlawful discriminatory practice:
>
> (a) For an employer or licensing agency, because of an individual's [...] sex, disability, predisposing genetic characteristics, familial status, [...] to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

87. The New York State Executive Law § 296(3)(a) provides that:

> "It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program."

88. Finally, New York State Executive Law § 296(7) provides that:

> "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because such person has (i) opposed any practices forbidden under this article, (ii) filed a complaint, testified, or assisted in any proceeding under this article, or (iii) requested a reasonable accommodation under this article."

89. Defendant violated the New York State Human Rights Law when they (i) discriminated against Plaintiffs PHILLIPS and SINGH and Class Members based on their gender, (ii) discriminated against Plaintiff SINGH on the basis of her familial status, and (iii) retaliated against Plaintiffs PHILLIPS and SINGH. Defendant subjected Plaintiffs PHILLIPS and SINGH to this discriminatory conduct.

90. This discriminatory conduct was in willful disregard of the provisions of the NYSHRL.

91. As a direct and proximate result of Defendant's willful disregard of the NYSHRL, Plaintiffs PHILLIPS and SINGH and Class Members suffered damages in the form of lost future earnings and emotional distress. Plaintiffs PHILLIPS and SINGH and Class Members seek all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, and attorneys' fees and costs.

**COUNT IV**
**VIOLATIONS UNDER THE NEW YORK CITY HUMAN RIGHTS LAW**

92. Plaintiffs reallege and incorporate all the above allegations as if fully set forth herein.

93. The New York City Administrative Code §8-107(1)(a) provides that:

"1. It shall be an unlawful discriminatory practice:

(a) For an employer or an employee or agent thereof, because of the actual or perceived […]gender, […] caregiver status, […] of any person:

1.
(1) To represent that any employment or position is not available when in fact it is available;
(2) To refuse to hire or employ or to bar or to discharge from employment such person; or
(3) To discriminate against such person in compensation or in terms, conditions or privileges of employment."

94. The New York City Administrative Code §8-107, in relevant part, provides that:

"It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, [...] (v) requested a reasonable accommodation under this chapter"

95. Defendant violated the New York City Human Rights Law when they (i) discriminated against Plaintiffs and Class Members on the basis of their gender, (ii) discriminated against Plaintiff SINGH on the basis of her caregiver status, and (iii) retaliated against Plaintiffs PHILLIPS. Defendant subjected Plaintiffs and Class Members to this discriminatory and retaliatory conduct.

96. This discriminatory conduct was in willful disregard of the provisions of the NYCHRL.

97. As a direct and proximate result of Defendant's willful disregard of the NYCHRL, Plaintiffs and Class Members suffered damages in the form of loss of future earnings and emotional distress. Plaintiffs and Class Members seek all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, and attorneys' fees and costs.

**COUNT V**
**VIOLATION OF APPLICABLE STATE EQUAL PAY LAWS**

98. Plaintiffs reallege and incorporate all of the above allegations as if fully set forth herein.

99. At all relevant times, Class Members were employed by Defendant within the meaning of the applicable State equal pay laws.

100. Defendant\s knowingly and willfully violated Plaintiffs' and Class Members' rights by failing to pay them at equal rates as their non-female colleagues for equal or substantially similar work.

101. Due to Defendant's State law violations, Plaintiffs and Class Members are entitled to recover from Defendant the difference between their salary and the salary of their non-female colleagues in equivalent positions, as well as front pay, back pay, statutory penalties, punitive damages, compensatory damages, liquidated damages, and attorneys' fees and costs and disbursements of the action.

**COUNT VI**
**VIOLATION OF APPLICABLE STATE DISCRIMINATION LAWS**

102. Plaintiffs reallege and incorporate all of the above allegations as if fully set forth herein.

103. At all relevant times, Class Members were employed by Defendant within the meaning of the applicable State discrimination laws.

104. Defendant knowingly and willfully violated Plaintiffs' and Class Members' rights when it discriminated against them on the basis of their gender and sex. Defendant compensated their female employees at lower rates, denied them growth opportunities, and promoted them less often than their non-female colleagues.

105. Defendant further discriminated against Plaintiffs and Class Members by fostering a hostile work environment in which female employees were valued below their non-female colleagues.

106. Due to Defendant State law violations, Plaintiffs and Class Members are entitled to recover from Defendant compensatory damages, punitive damages, and attorneys' fees and costs and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the EPA, EPL, NYSHRL, NYCHRL, and all relevant and applicable State laws;

b. An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of front pay and back pay, due under the EPA, the EPL, the NYSHRL, the NYCHRL, and all other applicable State laws;

d. And award of punitive damages, due to Defendant discrimination on the basis of sex and gender, due under the EPL, NYSHRL, NYCHRL, and all applicable State laws;

e. An award of compensatory damages, due to Defendant discrimination on the basis of sex and gender, due under the EPA, EPL, NYSHRL, NYCHRL, and all applicable State laws;

f. An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

g. Designation of Plaintiffs as Representative of the EPA Collective Plaintiffs;

h. Designation of this action as a class action pursuant to F.R.C.P. 23;

i. Designation of Plaintiffs as Representative of the Class; and

**j.** Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand trial by jury on all causes of action and issues so triable as of right by jury.

Date: August 11, 2026
New York, New York

Respectfully submitted,

By: /s/ *C.K. Lee*

C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 W. 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Email: cklee@leelitigation.com
*Attorneys for Plaintiffs,*
*EPA Collective Plaintiffs, and the Class*